Ex Parte, Jacinto A. Palacios, Peticionario.

No. 95.—*Sometido:* Diciembre 23, 1929. *Resuelto:* Febrero 27, 1930.

*L. Llorens Torres* y *Angel Arroyo Rivera,* abogados del peticionario;
*R. A. Gómez* y *Marcelino Romaní,* Fiscales del Tribunal Supremo
y del Distrito de San Juan, respectivamente, por *El Pueblo.*

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Según aparece de la acusación en este caso, Jacinto A. Palacios adquirió por compra una finca. Esta, una alegada panadería, fué descrita como que estaba "hipotecada" y como que dentro de la supuesta hipoteca estaban incluídos ciertos accesorios permanentemente adheridos al suelo y propios para panadería, a saber, una amazadora (*sic*) y un cilindro. La acusación entonces imputaba a Palacios el haber sustraído la amazadora y cilindro citados, con la intención de defraudar a la alegada acreedora hipotecaria. Todo ello con alegaciones más específicas respecto a la propiedad, origen, tiempo, lugar, conocimiento e intención, que no es necesario exponer, ya que ninguno de estos extremos fué realmente atacado por la excepción perentoria radicada ante la corte de distrito.

La teoría de la excepción más o menos fué que ningún artículo del Código Penal comprendía una "hipoteca" según la misma existía o era conocida en Puerto Rico; que la hipoteca descrita en la acusación era peculiar a Puerto Rico y que jamás podía ser la "hipoteca" reseñada en los estatutos; que la "hipoteca" a que se refieren dichos estatutos es algo más similar a un contrato de prenda o a una venta con pacto de retro. El peticionario sostuvo que la palabra "hipoteca" debe estar limitada a su significado de acuerdo con el derecho común, según el cual el título pasaba al acreedor hipotecario.

El Pueblo radicó un alegato para demostrar que la hipoteca moderna en el continente americano generalmente, y según existía en California, fuente de nuestro Código Penal,

era substancialmente idéntica a la hipoteca existente en Puerto Rico, y, por consiguiente, que se había cometido el delito descrito en el artículo 443 del Código Penal de Puerto Rico. Ese artículo prescribe lo siguiente:

"Toda persona que después de haber hipotecado una finca, y durante la vigencia de dicha hipoteca, o después que dicha finca hipotecada haya sido vendida en virtud de ejecutoria, y con el propósito de defraudar o perjudicar al acreedor hipotecario, sus representantes, sucesores, o cesionarios, o al comprador, en la ejecución de dicha finca hipotecada, o a los representantes o cesionarios de éste, sustrajere, removiere, se llevare o enajenare, destruyere o dañare, o permitiere que se sustraiga, remueva, lleve o enajene, cualquiera casa, granero, u otra dependencia, construída en ella como mejora, sin el consentimiento del acreedor hipotecario, dado por escrito, o de los representantes o cesionarios de éste, incurrirá en hurto, y sufrirá la pena correspondiente."

La Corte de Distrito de San Juan declaró sin lugar la excepción perentoria.

██ El peticionario no nos convence en manera alguna que no se imputara un delito, pero, aun si tuviéramos algo así como una verdadera duda, no pondríamos al acusado en libertad, en vista de las consideraciones generales aplicables a los autos de hábeas corpus.

Ese auto nunca fué creado para que hiciera las veces de un recurso de error o de apelación. El peticionario no ataca este principio, pero cita alguna jurisprudencia de California al efecto de que el auto es efectivo para determinar la cuestión de jurisdicción. Convenimos definitivamente en que si una acusación no imputa delito alguno conocido por las leyes de Puerto Rico, ninguna corte en el país puede tener jurisdicción, y que el arresto de una persona puede ser terminado por un auto de hábeas corpus.

Por otra parte, es muy evidente que si una acusación, aunque enteramente enmendable, deja de imputar delito alguno, aparentemente la misma falta de jurisdicción existe, y procedería universalmente el auto a menos que hubiera

alguna limitación para expedirlo. Además, podría ser dudoso si la acusación imputaba o no un delito, o si podía ser enmendada, y si debía ser la corte ante la cual se presentó el recurso de hábeas corpus—más bien que la corte sentenciadora—la que determinara la cuestión. *Henry* v. *Henkel*, 235 U. S. 228, *infra*.

Según indica el fiscal, sería absurdo determinar la suficiencia de una acusación antes de que la corte sentenciadora actúe, e igualmente, después de tal actuación, cuando existe un recurso adecuado de apelación. No obstante esto, las cortes no se negarán a librar el auto cuando el caso es tan extraordinario que requiere acción inmediata. Haremos una ligera revisión de una parte de la jurisprudencia.

Chapman se negó a contestar ciertas preguntas héchasle por un comité del Senado de los Estados Unidos. Fué acusado en el Distrito de Columbia de conformidad con un estatuto especial. Se declaró sin lugar una excepción perentoria, y en la corte de apelaciones se sostuvo la actuación de la corte inferior y se devolvió el caso para ulteriores procedimientos. El acusado presentó una petición ante la Corte Suprema de los Estados Unidos solicitando que se expidiera un auto de hábeas corpus. Ese tribunal revisó algunos casos y resolvió lo siguiente:

"Tenemos el convencimiento de que la ordenada administración de la justicia sería mejor servida negándose a ejercer jurisdicción de apelación en la forma interesada hasta que se terminen los procedimientos. Si se dicta sentencia contra el peticionario y esa sentencia es confirmada por la corte superior, procediendo un recurso de apelación, ése es el remedio más adecuado y el mejor para exponer cualquier queja que el peticionario pueda tener. Si, por otra parte, no procede un recurso de error para ante este Tribunal y la Corte Suprema del distrito carecía por completo de jurisdicción, entonces el peticionario puede solicitar el remedio radicando una petición de hábeas corpus. No hallamos en este caso circunstancias excepcionales que exijan que intervengamos con antelación al fallo de las cortes del distrito sobre los méritos del caso que tienen ante sí." *In re Chapman*, 150 U. S. 211.

El párrafo anteriormente transcrito fué citado en el caso de *Riggins* v. *United States,* 199 U. S. 547, en el cual la corte resolvió que estaba bien establecido que no procedía el auto de hábeas corpus a menos que la corte bajo cuyo mandamiento de arresto se hallaba detenido el acusado careciera de jurisdicción; que generalmente no procedía el auto cuando existía un remedio mediante recurso de error o apelación, pero que en casos raros y excepcionales podía librarse el auto, no obstante la existencia de tal remedio. En dicho caso se revocó la concesión del auto por la Corte de Circuito de los Estados Unidos, en vista de que el peticionario, de haber sido convicto, podía apelar. Todos los procedimientos se llevaron a cabo ante tribunales de los Estados Unidos.

Algo más recientemente, la procedencia del auto fué discutida en el caso de *Henry* v. *Henkel,* 235 U. S. 219, cuidadosamente revisado y citado en el alegato del fiscal. Las decisiones fueron examinadas al efecto de que, salvo en casos excepcionales, un peticionario no podía anticipar el curso ordinario de los procedimientos alegando falta de jurisdicción y exigiendo se dictara resolución sobre tal extremo en procedimientos de hábeas corpus, citando numerosos casos federales, incluyendo el de *Riggins* v. *United States, supra;* que establecer tal regla general intervendría con la administración del derecho penal.

Esta actitud no es especial de la Corte Suprema de los Estados Unidos. En 29 C. J. 14 se dice: ''El auto he hábeas corpus es uno a que se tiene derecho (*writ of right*) cuando se demuestra causa razonable, pero no procede imprescindiblemente (*Writ of course*). Es librado en ejercicio de discreción judicial. Y, nuevamente, en la página 17: ''Al igual que en otros recursos extraordinarios privilegiádos, el auto de hábeas corpus no será generalmente concedido cuando existe otro remedio adecuado mediante apelación o recurso de error.'' Cada párrafo está bien sostenido por autoridades.

La ley sobre hábeas corpus ha sido copiada en nuestro Código de Enjuiciamiento Criminal, el cual concede un reme-

dio de apelación. Un acusado puede esperar que· se le celebre juicio y que sea convicto después de declararse sin lugar una excepción perentoria, o sostener su excepción. Una apelación procede en ambos casos. Necesariamente se desprende que la Legislatura no tuvo la intención de conceder a un acusado dos derechos independientes y absolutos para revisar la suficiencia de una acusación. Las cortes, aquí como en todas partes, deben generalmente tener discreción para denegar el auto o para concederlo en casos extraordinarios. Este no presenta tal caso extraordinario. En *Henry* v. *Henkel, supra,* también se indicó (página 228) que una petición de hábeas corpus tal vez demoraría la celebración del juicio, en contra de los intereses tanto del público como del acusado. El presente es un caso en que el juicio ha sido dilatado por erpacio de dos meses por la necesidad de considerar este recurso. Además, no interesa a un acusado extraer una resolución preliminar de la corte ante la cual se presenta el recurso de hábeas corpus, especialmente cuando dicha corte es la de apelaciones. Semejante resolución, como en el presente caso, podría afectar el curso del juicio.

También deseamos agregar que esta Corte Suprema, cuya jurisdicción general es de apelación, no debería estar sujeta a solicitudes de esta índole. Las cuestiones a revisarse requieren la clase de deliberación proporcionada por una apelación.

*Debe anularse el auto expedido y devolverse al peticionario a la custodia del Márshal de la Corte de Distrito de San Juan.*